**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE**

**JAMES ROCKY WRIGHT**                                                                     **PLAINTIFF**

**v.**                                    **CIVIL ACTION NO. 3:06-CV-P572-S**

**FRITZ MOISE et al.**                                                  **DEFENDANTS**

**MEMORANDUM OPINION**

The plaintiff, James Rocky Wright, filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 (DN 1). This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the Court will dismiss certain claims and allow other claims to go forward.

**I. SUMMARY OF CLAIMS**

In 2001, the plaintiff filed suit against defendants Dr. Fritz Moise, Jefferson County Department of Corrections (DOC)[1]; Michael Horton, Director of the Jefferson County DOC; Marilyn Perry, Director of the Medical Department at the Community Corrections Center (CCC); Major Grace Smith, Director of the CCC; Edie Underwood, Administrator of Medical Programs for the Jefferson County DOC; and Sharon Sizemore, Administrator of Health Care Services, Jefferson County DOC, for failure to render proper medical care while the plaintiff was incarcerated in the Jefferson County DOC. *Wright v. Moise,* No. 3:01-CV-111-J. That case was dismissed for failure to exhaust administrative remedies. The dismissal order mistakenly stated that it was with prejudice. On appeal, the Sixth Circuit upheld that decision but clarified that the dismissal was without prejudice.

---

[1] Since the merger of the Louisville and Jefferson County governments on January 6, 2003, *see* Official Guide to Louisville Metro Government at http://www.loukymetro.org, the correct name is now the Louisville Metro Department of Corrections.

On February 9, 2006, the plaintiff moved to reopen his case in the district court stating that because his grievances had gone unanswered he had exhausted the grievance procedure. The Honorable Edward H. Johnstone denied that motion, finding that filing a new civil action was the better course of action. Thus, the plaintiff has filed the instant action.

The plaintiff has sued the same defendants. Additionally, he names as defendant Tom Campbell, current Director of Jefferson County DOC. He sues each defendant in his or her individual and official capacities.

He alleges in his complaint that in a car accident on September 27, 1999, he suffered back and neck injuries which aggravated a detached/ruptured bicep. He was arrested on October 6, 1999, by Louisville police and taken to the CCC. He states that he immediately informed the medical staff of his injuries and requested medication for pain and to be referred to the proper specialists. He alleges that, when he continued to complain of severe pain, he was seen by Dr. Moise, the attending physician at CCC, who never examined him or prescribed anything more than over-the-counter medications, like Tylenol. He states that the records show that on November 5, 1999, it was recommended that the plaintiff see an orthopedic specialist, but he did not see one until months later. However, he alleges, that he continued to complain of pain and was seen by Dr. Moise on several occasions. He asserts that, at various times, Dr. Moise told him that he might have to wait until he was released to get his arm and hernia looked at; that there was probably nothing that could be done for his bicep; and that he did not give narcotics. The plaintiff further alleges that he asked Dr. Moise to prescribe cortisone shots for his shoulder, which he states had worked to relieve the pain in the past, and for anti-inflamatories. The plaintiff alleges that Dr. Moise stated that cortisone shots were "'bad,'" but agreed that perhaps

2

the plaintiff's pain could be helped by anti-inflamatory drugs; however, Dr. Moise never prescribed anti-inflamatories for him.

The plaintiff alleges that he continued to complain about pain in his back and arm and had family members call the medical department on his behalf and Dr. Moise finally agreed to refer him to the Orthopedic Clinic and University Hospital. However, the plaintiff alleges, Dr. Moise later told him that the Orthopedic Clinic had refused to see the plaintiff, telling him that the reason the clinic had refused to see him was because there was nothing they could do for the arm because it had been too long since the accident. He further alleges that he later learned that Dr. Moise had lied about the clinic refusing to see him and that, in fact, Dr. Moise had not been going through the proper procedure to obtain a referral.

The plaintiff further alleges that on or about February 17, 2000, Dr. Moise recommended that the plaintiff have x-rays done and that records show that, as a result of the x-rays, an MRI was recommended, but the MRI was never done. He further states that he was seen by the University Orthopedic Clinic on March 28, 2000, and that doctors there recommended surgery to repair the bicep, scheduling the plaintiff for surgery one week later, on April 6, 2000. He states that he was never told the night before surgery not to eat or drink anything after midnight, although he, in fact, took it upon himself not to eat or drink anything after midnight. However, the surgery was cancelled and rescheduled for the next day because no one had informed him of the "NPO."[2] However, the plaintiff alleges, due to staffing problems he was not transported for surgery the next day.

---

[2] Apparently, this refers to the necessity of refraining from eating or drinking anything after midnight the night before a scheduled surgery.

The plaintiff further alleges that in late May 2000 he was transported to University Hospital for surgery but due to some sort of emergency he again did not undergo surgery. He also alleges that surgery was re-scheduled for July 6, 2000, but he was transferred to Kentucky DOC custody and again was not able to undergo surgery.

The plaintiff alleges that due to the defendants' deliberate indifference he has been exposed to chronic pain and partial disabilities. He alleges that Horton, who was the Director of the Jefferson County DOC at the pertinent time, ignored three letters the plaintiff sent to him in an effort to get surgery for his bicep. He alleges that Perry, the Director of the CCC's Medical Department, was responsible for medical treatment and that she violated his rights by failing to see that the plaintiff was seen by a physician, properly treated for pain, and referred to a specialist in a timely manner. He asserts that Smith was responsible for the implementation of department policies within the medical department and for transportation of prisoners to hospitals and that the plaintiff filed grievances and wrote letters to Smith regarding his lack of medical treatment. He alleges that Underwood ignored grievances and health service request forms and the plaintiff's need for medical treatment and was responsible for the medical department's failure to carry out basic medical services when it failed to "NPO" the plaintiff. He alleges that Sizemore was responsible for the medical care, referrals, and the daily operations of the medical department, but that she ignored his grievances and health service forms requesting medical treatment.

As relief, he requests injunctive relief in the form of ordering that the defendants arrange and pay for surgery to repair his left detached/ruptured bicep and left inguinal hernia; award monetary damages of $72,000; and award punitive damages of $250,000. He also asks for a

summary judgment/directed verdict stating that his injuries meet the requirements of "serious medical" injury and that the defendants are not entitled to claim a defense of qualified immunity based on this Court's and the Sixth Circuit's rulings in his prior case.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), a plaintiff is required to plead more than bare legal conclusions. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). Therefore, the "complaint must contain either direct or inferential allegations respecting all the material

elements to sustain a recovery under *some* viable legal theory." *Id.* (internal quotation marks and citations omitted).

### *Hernia claim*

The complaint makes very little reference to a hernia. It states that on June 29, 2000, the plaintiff was transferred to state custody without ever having surgery for his detached bicep or inguinal hernia and references a November 29, 2005, grievance, which is attached to the complaint, in which the plaintiff stated that he had a detached bicep and an inguinal hernia, for which he had repeatedly attempted to obtain surgery, and that Dr. Moise had completely ignored the hernia. The plaintiff also alleged in his complaint that Dr. Moise told him that he might have to wait until he was released to have his arm and his hernia looked at. None of the attached medical records reference any complaint regarding a hernia.

Because the plaintiff has failed to include in his complaint more than the most cursory mention of his hernia, the complaint fails to state a claim with regard to his hernia. *Lillard*, 76 F.3d at 726. The Court will therefore dismiss this claim.

### *Claims against Tom Cambell*

The plaintiff's only allegation against Tom Campbell, the current director of Jefferson County DOC, is that the plaintiff wrote to him detailing the grievances previously filed, and Campbell answered by saying that he cannot respond to a grievance filed that long ago under a different administration. The plaintiff alleges that Campbell's response is specious because Campbell has access to the record; that, in fact, the record is probably more extensive now; and that inmate grievance policy provides for follow-up, including the filing of a new grievance, even after an inmate has left the DOC. Thus, the plaintiff asserts that Campbell had a duty to

respond to his grievance. However, the plaintiff also alleges that Campbell did respond to his grievance and, therefore, he has exhausted the grievance procedure.

Clearly, the complaint fails to state a claim against Campbell. The plaintiff's only allegation is that Campbell did not respond to a grievance filed five or six years after the fact, and the plaintiff even argues that Campbell's refusal to respond to the grievance constitutes a response for purposes of exhaustion. Even if the plaintiff's allegations are read to claim that Campbell violated the inmate grievance procedure, such a claim is not cognizable under § 1983. If a prison provides a grievance process, violations of its procedures do not rise to the level of a federal constitutional right. *Martin v. Crall*, No. 3:05 CV P399 H, 2006 WL 515530, at *8 (W.D. Ky. Feb. 27, 2006); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986); *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). The Court will, therefore, dismiss the plaintiff's claims against Campbell.

### *Official capacity claims against all of the defendants*

The plaintiff sues all of the defendants in their official capacities. If an action is brought against an official of a governmental entity in his official capacity, the suit should be construed as brought against the governmental entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, in the case at bar, the plaintiff's claims against the defendants in their official capacities are actually brought against the Louisville Metro government. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

When a § 1983 claim is made against a municipality, a court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights*,

*Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

In the instant case, the plaintiff has not alleged the existence of a governmental policy or

8

custom relative to the nature of his complaints and claims relating to his detached bicep. Because the plaintiff does not allege the existence of a direct causal link between a municipal policy or custom and the alleged Eighth Amendment violation, *see Monell*, 436 U.S. at 691, he has failed to state a claim for which relief may be granted against the Louisville Metro government. *See* § 1997e(c)(2). Therefore, all of the plaintiff's claims against the defendants in their official capacities will be dismissed.

*Eighth Amendment Claims*

The plaintiff appears to have been a pretrial detainee during the pertinent time period. The Eighth Amendment does not apply to pretrial detainees. *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003). "Under the Fourteenth Amendment Due Process Clause, however, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). "In the context of medical care for prisoners and detainees, it is well established that 'deliberate indifference to a prisoner's [or detainee's] serious illness or injury states a cause of action under § 1983.'" *Weaver v. Shadoan*, 340 F.3d at 410 (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)) (alteration in original).

Thus, to state a cognizable claim, a prisoner or pretrial detainee must show that the official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). Less flagrant conduct, however, may still evince deliberate indifference where there is "a showing of grossly inadequate care as well

9

as a decision to take an easier but less efficacious course of treatment." *Id.* (quoting *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999)). Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Not every claim of inadequate medical treatment states an Eighth Amendment violation. *Estelle*, 429 U.S. at 105. A difference of opinion between the inmate and the prison medical official(s) concerning diagnosis or treatment does not constitute a constitutional violation. *Id.* at 107. Nor does negligent medical care constitute a constitutional violation without deliberate indifference resulting in substantial harm. *Id.* at 106; *Johnson v. Leonelli*, No. 99-6220, 2000 WL 1434767, at *1 (6th Cir. Sept. 19, 2000). Further, the courts make a distinction between cases in which there is a complete denial of medical care and those where the claim is one of inadequate medical treatment. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*

The doctrine of respondeat superior, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). To find a supervisor liable, he must have "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct. . . ." *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).

The plaintiff's allegations are that, when he was finally seen by outside medical professionals, it was determined that surgery for the plaintiff's detached bicep was necessary, yet proper arrangements for that surgery to occur were not made. With regard to Horton, the plaintiff alleges only that Horton, who was the Director of the Jefferson County DOC at the pertinent time, ignored three letters the plaintiff sent to him in an effort to get surgery for his bicep. The plaintiff does not make the required showing with regard to Horton. Therefore, the claims against Horton will be dismissed. However, reading the plaintiff's complaint liberally, as the Court must, *Boag v. MacDougall,* 454 U.S. at 365, the Court will allow the **Eighth Amendment claim against the remaining defendants in their individual capacities regarding the plaintiff's detached bicep to proceed forward at this time.**

*Claims for injunctive relief*

The plaintiff's request for injunctive relief in the form of an order that the defendants be required to arrange and pay for surgeries for his bicep is moot because he is no longer incarcerated at the Louisville Metro DOC. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Therefore, that claim will be dismissed.

### III. CONCLUSION

The Court will enter a separate order dismissing the plaintiff's claim relating to his hernia, his claim against Tom Campbell, all claims against the defendants in their official capacities, his claim against Michael Horton, and his claim for injunctive relief. The Court also will enter a separate scheduling order governing the remaining claims. In permitting the remaining claims to go forward, the Court passes no judgment on the merits or ultimate outcome of this case.

With regard to the plaintiff's request for a summary judgment or directed verdict that his injuries meet the requirements of "serious medical" injury and that the defendants are not entitled to claim a defense of qualified immunity based on this Court's and the Sixth Circuit's rulings in his prior case, the Court will not entertain such a request at this time because the defendants have not yet been served with the complaint. The scheduling order entered this date addresses the appropriate time for filing a dispositive motion.

Date:

cc: Plaintiff, *pro se*
    Defendants
    Jefferson County Attorney
4411.009