### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### AT LOUISVILLE

JAMES ROCKY WRIGHT                                                    PLAINTIFF

v.                                         CIVIL ACTION NO. 3:06-CV-P572-S

FRITZ MOISE et al.                                                  DEFENDANTS

### <u>MEMORANDUM OPINION</u>

Defendant Edie Underwood has filed a motion to dismiss the complaint in this 42 U.S.C.

§ 1983 case (DN 19).  Defendant Underwood asserts that the plaintiff, James Rocky Wright, has

failed to state a claim for which relief may be granted because the action is barred by the

applicable one-year statute of limitations.  Defendant Underwood also asserts that the plaintiff

has failed to exhaust administrative remedies at the Jefferson County Department of Corrections

(DOC).  Defendants Fritz Moise, M.D., Marilyn Perry, and Sharon Sizemore filed a motion to

dismiss, which incorporates Defendant Underwood's motion (DN 21).  The Court finds, as

discussed below, that the motions to dismiss should be granted on the grounds of exhaustion;

therefore, the Court will not address the defendants' statute-of-limitations argument.

## I.  ALLEGATIONS IN THE COMPLAINT

In 2001, the plaintiff filed suit against defendants Dr. Fritz Moise, Jefferson County

DOC[1]; Michael Horton, Director of the Jefferson County DOC; Marilyn Perry, Director of the

Medical Department at the Community Corrections Center (CCC); Major Grace Smith, Director

of the CCC; Edie Underwood, Administrator of Medical Programs for the Jefferson County

DOC; and Sharon Sizemore, Administrator of Health Care Services, Jefferson County DOC, for

---

[1] Since the merger of the Louisville and Jefferson County governments on January 6, 2003, *see* Official Guide to Louisville Metro Government at http://www.loukymetro.org, the correct name is now the Louisville Metro Department of Corrections.

their alleged failure to render proper medical care while the plaintiff was incarcerated in the Jefferson County DOC. *Wright v. Moise,* No. 3:01-CV-111-J. That case was dismissed for failure to exhaust administrative remedies. The dismissal order mistakenly stated that it was with prejudice. On appeal, the Sixth Circuit upheld that decision but clarified that the dismissal was without prejudice.

On February 9, 2006, the plaintiff moved to reopen his case in the district court stating that because his grievances had gone unanswered he had exhausted the grievance procedure. The Honorable Edward H. Johnstone denied that motion, finding that filing a new civil action was the better course of action. Thus, the plaintiff has filed the instant action.

The plaintiff's instant complaint names the same defendants and added as a defendant Tom Campbell, current Director of Jefferson County DOC.[2] He alleges in pertinent part in his complaint that he suffered injuries in a car accident in September 1999, which aggravated a detached/ruptured bicep. Shortly thereafter, he was arrested and taken to the CCC. He states that he immediately informed the medical staff of his injuries and requested medication for pain and to be referred to the proper specialists. According to the plaintiff, eventually doctors at the University Orthopedic Clinic recommended surgery to repair the bicep. The plaintiff further alleges that surgery was postponed twice.

The plaintiff further alleges that in late May 2000 he was transported to University Hospital for surgery but due to some sort of emergency he again did not undergo surgery. He

---

[2] On initial review, the Court dismissed the plaintiff's claims regarding a hernia, his claims against Campbell and Horton, all of his official-capacity claims, and all of his claims for injunctive relief, leaving only the plaintiff's individual-capacity claims against the remaining defendants regarding his detached bicep.

2

also alleges that surgery was re-scheduled for July 6, 2000, but he was transferred to Kentucky DOC custody and again was not able to undergo surgery.  The plaintiff alleges that due to the defendants' deliberate indifference he has been exposed to chronic pain and partial disabilities.

He alleges that although the Jefferson County DOC has a greivance policy, it does not abide by that policy.  He states that he did file a grievance in November 1999 concerning the fact that there was no posted grievance policy, but that he did not receive a response.  He states that the first time he saw a response to this grievance was in September 2000 after he requested his records from Jefferson County DOC.  He attaches as an exhibit a response to that grievance but points out that he had not signed it and that there was no date of receipt, no signature of "Response by Major," and no "Supervisor's signature."

He further alleges that on May 3, 2000, he filed a grievance about rescheduling his surgery.[3]  He states that that grievance was not responded to prior to his being transferred from the CCC in June 2000.  He submits a copy of that grievance with a signature of grievance counselor, a "Mr. Glass," dated May 24, 2000, which the plaintiff asserts was "obviously back-dated" because he did not receive a copy of that grievance with Mr. Glass's signature until after he left CCC custody.  He also attaches a response to that grievance, which is dated May 5, 2000, but states that he did not receive that response until September 2000.[4]  He points out that it has

---

[3] That grievance states: "On May 2nd . . . I was told that I had been scheduled for surgery on two separate occasions but [CCC's] medical staff . . . failed to notify me the night before in order for me to stop eating in time . . . Doctors were reluctant to re-schedule my surgery, but I believe they did."  The action he requested was for the "medical staff at CCC [to] be reminded that surgery is a reasonably important procedure and they should take their job responsibilities more seriously . . . ."

[4] That response simply details that the plaintiff was scheduled for surgery two times, each of which had to be cancelled, and that attempts had been made to reschedule.

not been signed by the plaintiff.

He further alleges that on November 29, 2005, he "submitted a written follow-up of grievance filed regarding . . . detached bicep to Chief of Corrections/Jefferson County." However, the chief failed to respond.  The plaintiff again submitted a letter requesting a response, and Campbell responded that his office cannot respond to a grievance that was filed several years before under a different administration.  The plaintiff alleges that the grievance policy does provide a process for responding to a grievance after an inmate has left Jefferson County DOC's custody.  He alternatively alleges that his grievance is exhausted because Campbell did write a response to his letter.

He attaches among other things to his complaint a copy of the Jefferson County DOC grievance policy effective April 25, 1997; his November 16, 1999, grievance asserting that most inmates were unaware of the steps in the grievance mechanism and asking that grievance procedures be posted; his May 3, 2000, grievance without Mr. Glass's signature; a copy of that grievance form with Mr. Glass's signature; the response-by-supervision form to his grievance dated May 5, 2000; a copy of the letter from the plaintiff to the Chief of Corrections at Jefferson County DOC dated November 29, 2005, asking for a response to his May 3, 2000, grievance; a letter from the plaintiff dated August 24, 2006, to the Chief of Corrections asking for a response to his previous letter; and a copy of the letter from Campbell dated August 30, 2006, stating that the DOC could not "attempt to respond to a grievance that was filed five to six years ago under a different administration and different medical provider."

## II.  MOTION TO DISMISS

Defendant Underwood argues that this action should be dismissed because the plaintiff

failed to exhaust his administrative remedies.  Specifically, Defendant Underwood argues that the grievance procedure was not completed because the plaintiff did not pursue his grievance past the initial stage; instead, he abandoned his May 3, 2000, grievance after a conversation with the grievance counselor.  Defendant Underwood attaches a copy of the grievance procedure for the Jefferson County Department of Corrections effective April 25, 1997; a Jefferson County DOC Inmate Handbook; a copy of the November 1999 grievance from the plaintiff; the response to that grievance; a copy of the May 3, 2000, grievance from the plaintiff; and the response to that grievance dated May 5, 2000.  Also attached are excerpts of a deposition on March 6, 2002, of the plaintiff, in which the plaintiff discussed whether he pursued any additional administrative relief beyond filing the May 3, 2000, grievance.

        In response, the plaintiff argues that Defendant Underwood's claim that his complaint should be dismissed for failure to state a claim for which relief could be granted is incorrect and barred by *res judicata* based on the Sixth Circuit's decision in his case.[5]  He asserts that he has exhausted all grievance procedures of the Jefferson County DOC, as detailed in his original complaint.  He argues that in fact Jefferson County does not provide a handbook to incoming inmates, at least not when he arrived in jail, as evidenced by him having to file a grievance about that.  He further argues that the copies of his grievances show that the DOC did not respond to his grievance and even "'doctored' a copy of the grievance by signing it and backdating it with a signature of 'Mr. Glass,' the Grievance Coordinator, in order to make it appear that it had been responded to."  He asserts that there was nothing more he could have done to attempt to receive

---

        [5] The Sixth Circuit did not hold that the grievance was exhausted, but rather that the dismissal for lack of exhaustion should be without prejudice.

medical treatment for his injury.  He also asserts that his complaint is timely under 28 U.S.C.

§ 2244.[6]

In reply, Defendant Underwood argues that the plaintiff's November 1999 grievance

indicates that he was aware of the grievance steps and time limits and that based on the

plaintiff's grievance a copy of the inmate grievance procedure was given to the inmates on the

following day.  In response, the plaintiff asserts that he did meet the statute of limitations

requirements and that he did meet the requirement of exhausting his administrative remedies "as

is now provided by the United States Supreme Court."

The defendants bring their motion under Fed. R. Civ. P. 12(b)(6) for failure to state a

claim upon which relief can be granted.  In deciding a motion brought under Rule 12(b)(6), the

Court must construe the complaint in the light most favorable to the plaintiff, accepting all of the

plaintiff's allegations as true.  *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998).  Further, "the

allegations of a complaint drafted by a *pro se* litigant are held to less stringent standards than

formal pleadings drafted by lawyers in the sense that a *pro se* complaint will be liberally

construed in determining whether it fails to state a claim upon which relief could be granted."

*Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).

Under Fed. R. Civ. P. 12(d), "If, on a motion under Rule 12(b)(6) or 12(c), matters

outside the pleadings are presented to and not excluded by the court, the motion must be treated

as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity

to present all the material that is pertinent to the motion."  The Sixth Circuit has interpreted the

language of former Rule 12(b)(6), which is mirrored in current Rule 12(d), to require

---

[6] Section 2244 actually applies to habeas corpus cases.

"unequivocal notice" of the conversion of the motion to dismiss to one for summary judgment. *See Helwig v. Vencor, Inc.*, 251 F.3d 540, 552-53 (6th Cir. 2001); *see also Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004). Because that notice has not occurred in this matter, the extraneous material attached to Defendant Underwood's motion to dismiss cannot now be considered.

Although a court ruling on a Rule 12(b)(6) motion may not consider matters outside the pleadings, *see Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989), when a plaintiff attaches an exhibit to his complaint, the attachment becomes a part of that pleading and may be considered. *See* Fed. R. Civ. P. 10(c). Therefore, the Court may consider the attachments to the complaint, some of which also are attached to the motion to dismiss. The documents that the Court may consider do not include the deposition excerpts, which were only attached to the motion to dismiss.

The Prison Litigation Reform Act of 1995 (PLRA) requires prisoners to exhaust all available prison grievance procedures before filing suit in federal court. 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81 (2006). At the pertinent time, Jefferson County DOC had a grievance policy. According to the grievance policy attached to the complaint, all inmates receive "a written copy and an oral explanation of the grievance procedure at orientation." An inmate is first required to attempt to resolve a grievance informally. If the grievance is unable to be resolved informally, the inmate may submit a formal written grievance, first to the shift commander for review, then to the appropriate section head, next to the Lieutenant Colonel, and finally to the Chief/Director of Corrections. The grievance procedure imposes time limits for resolution at each stage of the process and allows for extensions of those time limits.

Additionally, the grievance procedure provides that "[a]bsent an extension, expiration of response time entitles the inmate to move on to the next step in the review process."

The plaintiff alleges and the attachments to his complaint show that he designated his May 3, 2000, grievance as an "emergency" grievance. The greivance policy provides special consideration for emergency grievances. The DOC is supposed to determine within 24 hours whether the grievance is an emergency. If a grievance submitted as an emergency is ruled at any level not to be so, it is supposed to be returned to the inmate citing the reasons why it is not considered an emergency and indicating that the grievance may be resubmitted as a regular grievance. The policy further states emergency grievances may be appealed and the inmate is notified in writing immediately after a decision is made. However, according to the policy, an emergency grievance must be resolved and a written response provided to the inmate within 72 hours.

It is apparent from the pleadings and the attachments to the complaint that the defendants did not follow their grievance procedure for responding to an emergency grievance.[7] However, whether the plaintiff's grievance was or was not considered an emergency grievance and whether or not the plaintiff received a response to that grievance, it is clear that the plaintiff has not exhausted the grievance procedure because he did not move on to the next step in the review process. *See generally Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). "Even if plaintiff did file an initial grievance . . ., he was required to continue to the next step in the grievance process within the time frame set forth in the regulations if no response is received from prison

---

[7] It is not necessary for the Court to determine whether the plaintiff's grievance was, in fact, properly considered an emergency grievance.

officials or if the prisoner is not satisfied with the response." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). "An inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Id.*

The plaintiff alleges that despite his repeated requests he did not receive responses to his grievances by the time he left Jefferson County DOC custody over six weeks after he filed his May 3, 2000, grievance. But to properly exhaust for either an emergency or a non-emergency grievance all that was required was for him to continue with the steps as laid out in the grievance procedure. He did not do so. Nor did the plaintiff's writing a letter to Campbell in 2005 satisfy the exhaustion requirement. Clearly, writing a letter to Campbell was not the next step in the grievance procedure and in any event was out-of-time. And, it is clear from Campbell's response (attached to the complaint) that the plaintiff's letter was considered to be an improper attempt at exhausting the grievance procedure. The Supreme Court has held that the Prison Litigation Reform Act (PLRA) "exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93. "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'" *Jones v. Bock*, 549 U.S. 199, 127 S Ct. 910, 922-23 (2007)). Simply put, the plaintiff did not "properly" exhaust his grievance.

Ordinarily, where, as here the plaintiff did not complete the inmate grievance process, that failure would require dismissal of his claims without prejudice. *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2004). In fact, the Sixth Circuit clarified that the plaintiff's prior suit was dismissed for lack of exhaustion without prejudice. However, here it is clear that administrative remedies are absolutely time-barred or otherwise obviously infeasible, and the

9

plaintiff's failure to exhaust should result in a dismissal with prejudice.  *See Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (noting that a pre-PLRA Fifth Circuit case had reasoned that without "the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies" (internal quotation marks omitted)); *see also Berry v. Kerik*, 366 F.3d 85, 87-88 (2d Cir. 2004) (indicating that dismissal with prejudice would be appropriate where "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust").  This case represents the plaintiff's second attempt to show that his claims are exhausted.  With the exception of the letter he wrote to Campbell in 2005, the situation remains the same:  the plaintiff failed to exhaust his administrative remedies and the time to do so is clearly long since past.  To dismiss the plaintiff's claims without prejudice again would be to invite the plaintiff to file suit for the third time when the record shows that the plaintiff cannot have exhausted his claims.  He has had ample opportunity to present evidence concerning the issue of exhaustion as raised by the defendants in their motions to dismiss.  It is obvious that, even taking the plaintiff's allegations as true, exhaustion has not occurred and that proper exhaustion cannot now occur.

Accordingly, the defendants' motions to dismiss must be granted because the plaintiff has not exhausted his administrative remedies, and the dismissal will be with prejudice.

## III.  DEFENDANT GRACE SMITH

The Court notes that Defendant Grace Smith was never served with summons and the complaint.  *See* DN 18 (summons twice returned as refused).  For the same reasons that the

Court finds that the other defendants' motions to dismiss should be granted, the Court finds that the claims against Defendant Smith would have to be dismissed as well.  *See* 28 U.S.C. § 1915(e)(2)(B)(1); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) (holding that "§ 1915(e)(2) is applicable throughout the entire litigation process [and a] case that may not initially appear to meet § 1915(e)(2) may be dismissed at a future date should it become apparent that the case satisfies this section.").  Thus, the service of summons against Defendant Smith would be futile.  The claims against Defendant Smith also will be dismissed.

## IV.  CONCLUSION

The Court will enter a separate order consistent with this Memorandum Opinion.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        Jefferson County Attorney
4411.009

11